IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
HUNTINGTON

TERESA KEELING, in her own right and as
representative of a class of persons
similarly situated,
      Plaintiff,

v.                                          Civil Action No. 3:23-cv-00352

THE HUNTINGTON NATIONAL BANK,
      Defendant.

## CLASS ACTION COMPLAINT

COMES NOW the Plaintiff, by counsel, and avers and says:

### NATURE OF ACTION

1.    This is an action brought under the West Virginia Consumer Credit and Protection Act 46A-2-101 et seq. and 46A-6-101 et seq. (hereafter "WVCCPA") and for breach of contract.

### JURISDICTION AND VENUE

2.    Plaintiff, Teresa Keeling, was at all times relevant a citizen and resident of Putnam County, West Virginia.

3.    This action, in part, arises out of Defendant The Huntington National Bank's (at times referred to herein as "Huntington" or "HNB") violations of the WVCCPA and its illegal efforts to collect a consumer debt from Plaintiff.

4.    The jurisdiction of this Court is conferred by 28 U.S.C. § 1332, as this civil action is between citizens of different states and the amount in controversy exceeds $75,000. Upon information and belief, jurisdiction is further conferred under CAFA, 28 U.S.C. § 1332(d) as

minimal diversity exists, there are more than 100 putative class members, and more than $5 million dollars in controversy.

5. Venue is proper for this Court because acts and transactions at issue occurred in Putnam County, West Virginia.

## PARTIES

6. Plaintiff/Borrower: Teresa Keeling is a borrower on the consumer loan that is the subject of this action. Plaintiff is a person who falls under the protection of Article 2 of the WVCCPA and is entitled to the remedies set forth in Article 5 of the WVCCPA.

7. Defendant/Loan Servicer: HNB is a mortgage lender and servicing company with its principal office located at 17 S High Street, Columbus, OH 43215.

## FACTUAL ALLEGATIONS

8. Plaintiff incurred a financial obligation that was primarily for personal, family or household purposes and is therefore a "claim" as that term is defined by W.Va. Code §46A-2-122(b).

9. The Defendant, HNB, is a debt collector engaging directly or indirectly in debt collection within the State of West Virginia, including Putnam County, West Virginia.

10. Defendant HNB is a "debt collector" as that term is defined by W.Va. Code §46A-2-122(d).

11. The debt alleged owed is a "claim" as that term is defined by W.Va. Code §46A-2-122(b).

12. The actions of HNB are "debt collection" as that term is defined by W.Va. Code §46A-2-122(c).

13. Plaintiff is the owner of residential real estate (hereafter "property") referenced at Trust Deed Book 1092, Page 409 as recorded with the Clerk of the County Commission of Putnam County, West Virginia (hereafter "Clerk").

14. The mailing address of the subject property is 312 Joshua Way, Winfield, West Virginia 25213.

15. Plaintiff obtained a mortgage by way of a Note and Deed of Trust dated February 11, 2015 with the lender HNB, in the amount of $164,326.00.

16. HNB is the lender and has been exercising the servicing rights for the subject loan under the loan agreements.

17. The Plaintiff suffered a financial hardship in 2017 and entered into a loan modification agreement with HNB in mid-2017. The Note and Deed of Trust remained unchanged except for the interest rate and due date. The loan principal was $118,614.74.

18. The modification included a partial claim deed of trust and note, which required that $47,439.50 was due when the modified loan was paid off in May 2047.

19. Plaintiff continued making payments until she experienced another financial hardship during the COVID-19 pandemic.

20. Plaintiff was granted a Covid-related forbearance on April 28, 2020, delaying her payment due date until October 2020 and inviting her to apply for a loan modification at that time.

21. Following her forbearance, HNB advised Plaintiff and represented that she qualified for a partial claim that would bring her loan current.

22. HNB mailed Plaintiff the partial claim agreement, which she signed and returned on July 26, 2021.

23. A representative of HNB, Sabrina Rucker, also executed the document on August 2, 2021.

24. Sometime thereafter, HNB shockingly advised Plaintiff that she was not qualified for the partial claim and proceeded to pursue foreclosure.

25. HNB misled the Plaintiff and gave her false hope in making misrepresentations regarding and in processing a second FHA partial claim that Plaintiff could not have qualified for based on objective criteria that was known or should have been known by HNB.

26. Thereafter, Plaintiff submitted additional loss mitigation applications in full to HNB.

27. HNB communicated with the Plaintiff on several occasions advising that the loss mitigation was incomplete.

28. Subsequent to the partial claim reversal, the Plaintiff made several mortgage payments to HNB.

29. HNB failed to apply these payments to Plaintiff's loan and instead placed the payments in a "suspense account" where they were held for several months despite the fact that sufficient amounts to apply to the loan had accumulated.

30. At all relevant times, Plaintiff was ready, willing and able to make the monthly mortgage payments, but HNB failed to apply said payments.

31. On or about April of 2022, HNB initiated a foreclosure process based upon the Plaintiff's alleged failure to pay while failing itself to fairly communicate with the Plaintiff and refusing to apply payments.

32. HNB mailed a letter to Plaintiff dated April 15, 2022, claiming that Plaintiff was in default and stating that failure to cure the default may result in acceleration of the entire balance of the mortgage.

33. As of May 23, 2022, HNB referred Plaintiff's loan for formal foreclosure.

34. Throughout this time, Plaintiff continued to submit all necessary documentation to support her loan modification application.

35. By letter dated May 31, 2022, HNB requested Plaintiff's most recent paystubs.

36. Plaintiff provided these paystubs, but HNB refused to review the paystubs allegedly because Plaintiff did not have the loan number written on the requested paystubs.

37. Plaintiff diligently worked with the HNB Home Savers department to comply with each request.

38. By letter dated July 18, 2022, HNB again requested the same paystubs that Plaintiff had by now repeatedly provided.

39. As such, Plaintiff believed in good faith that HNB was still working with her to modify her mortgage.

40. However, HNB never analyzed Plaintiff's loan modification application because it internally deemed Plaintiff to be too far behind.

41. Upon information and belief Pill & Pill acting at the bequest of HNB, stated that it "does hereby accelerate and declare all sums secured by said Deed of Trust to be immediately due and payable without further demand" in a letter to the Plaintiff dated June 22, 2022.

42. However, one or more mortgage statements including the mortgage statement dated August 17, 2022, that HNB sent to the Plaintiff does not show an accelerated mortgage balance. The August 17, 2022, statement represents that the borrower has until September 1, 2022, to pay the "amount due" of $25,303.18.

43. Prior to August 17, 2022, HNB foreclosed on the Plaintiff's home. On August 1, 2022, it sold the subject property to a third party.

44. Plaintiff was unaware that her property was being sold on August 1, 2022.

45. The third-party purchaser filed an eviction action against the Plaintiff.

46. Plaintiff was forced to vacate the home.

47. Plaintiff had built up substantial equity in the home that was lost through the foreclosure sale.

48. To make matters worse, HNB charged Plaintiff for attorneys' fees in relation to its collection and foreclosure activity, which are prohibited by the Note, Deed of Trust, and statute.

49. Similarly, HNB charged the Plaintiff for property inspection fees that are not authorized by statute and not permitted by the Note at least until acceleration occurs.

50. West Virginia Code § 46A-2-127 prohibits the use of "any fraudulent, deceptive or misleading representation or means to collect or attempt to collect claims or to obtain information concerning consumers."

51. Among the examples of conduct deemed to violate section 2-127 is "[a]ny representation that an existing obligation of the consumer may be increased by the addition of attorney's fees, investigation fees, service fees or any other fees or charges when in fact such fees or charges may not legally be added to the existing obligation." W.Va. Code § 46A-2-127(g).

52. West Virginia Code § 46A-2-128(c) prohibits a debt collector from "collect[ing] or attempt[ing] to collect from the consumer all or any part of the debt collector's fee or charge for services rendered."

53. West Virginia Code § 46A-2-128(d) prohibits "[t]he collection of or the attempt to collect any interest or other charge, fee or expense incidental to the principal obligation unless such interest or incidental fee, charge or expense is expressly authorized by the agreement creating the obligation and by statute."

54. No West Virginia statute expressly authorizes Defendant to collect legal fees and costs, attorneys' fees, property inspection fees or the other default charges threatened or assessed by HNB.

55. The agreements that evidence this consumer loan do not provide for attorney fee charges as a result of default of the consumer. Indeed, the applicable deed of trust at paragraph 22 states as follows: "[t]he provisions in this Security Instrument to pay attorneys' fees shall be void."

56. In addition, the Note expressly states that any default expenses "will not include, attorneys' fees" at paragraph 6(E).

57. Defendant HNB threatened to assess and/or assessed unlawful default fees to the loan, including, but not limited to, "attorney's fees" and "legal fees."

58. In addition to the attorneys' fees, HNB has assessed and collected, and/or threatened to assess and collect, property inspection fees and other default related fees from Plaintiff.

59. Upon information and belief, HNB threatens to charge and charges the same illegal fees to persons with West Virginia addresses.

60. Furthermore, except for reasonable expenses authorized by statute for realizing on a security interest as specified in W.Va. Code § 38-1-7, no charges as a result of default by the consumer are permitted unless authorized by Chapter 46A of the West Virginia Code (the "WVCCPA"). See, W.V. Code § 46A-2-115(a).

61. The WVCCPA does not authorize property inspection fees. Nor does any other statute in the West Virginia Code.

62. For certain federally regulated loans the WVCCPA specifies other permissible types of charges as a result of default in W.Va. Code § 46A-2-115(b)(2), including costs of publication, appraisal fees, title examination fees, notice and mailing fees, and certain trustee expenses.

63. Even for federally regulated loans, loan servicers are restricted from assessing these specified charges unless the parameters set forth in W.Va. Code § 46A-2-115(b)(3) exist.

64. Plaintiff's loan is such a federally regulated loan for at least the following reasons: it was originated by a bank and it is insured by HUD through the FHA loan program. HUD requires its loan servicers to follow state law.

65. However, W.Va. Code § 46A-2-115(b) does not authorize property inspection fees, or default related fees generally. Even if property inspection fees were authorized, which they are not, the parameters of 2-115(b)(3)(C)&(D) have not been met. Accordingly, there is no statutory authorization to charge these fees.

66. Plaintiff's mortgage agreement in paragraph 14 of the Deed of Trust likewise prohibits fees and charges prohibited by state law.

67. The property inspection fees and other default related fees are not permitted by either Plaintiff's mortgage agreement or by law.

68. As a direct and proximate result of the wrongful conduct of the Defendant, the Plaintiff lost possession of her home and has suffered economic and non-economic damages, including annoyance, aggravation, inconvenience, embarrassment and emotional distress.

69. As a direct and proximate result of the wrongful conduct of the Defendant, the Plaintiff and class members incurred unlawful fees and/or threats of unlawful fees and have suffered economic and non-economic damages, including annoyance, aggravation, and inconvenience.

70. Plaintiff complied with the pre-suit notice and cure requirements under W.V. Code 46A-5-108 before filing this complaint.

**Class Allegations**

71. Plaintiff brings this action individually and on behalf of all others similarly situated.

72. The classes of consumers represented by Plaintiff in this action are defined as:

**Property Inspection Fees Subclass:** All consumers with West Virginia addresses who, within the applicable statute of limitations preceding the filing of this action through the date of class certification, had or have loans serviced by Defendant that were assessed and/or threatened to have assessed property inspection fees or other default fees.

**Attorney Fees Subclass:** All consumers with West Virginia addresses who, within the applicable statute of limitations preceding the filing of this action through the date of class certification, had or have loans serviced by Defendant and were assessed and/or threatened to have assessed attorneys' fees.

**Accelerated Balance Subclass:** All consumers with West Virginia addresses who, within the applicable statute of limitations preceding the filing of this action through the date of class certification, had or have loans serviced by Defendant that were accelerated and thereafter were sent demands for payment that included an amount other than the fully accelerated balance of the loan.

73. Defendant HNB has corporate policies and procedures regarding the collection of debts allegedly owed by West Virginia consumers such as Plaintiff. Defendant carries out its policies and procedures through the use of standardized collection activities and software programming.

74. The class can be readily identified by collection activity logs, account records and computer storage devices or databases, maintained by Defendant and/or its employees, representatives or agents.

75. The class is so numerous that joinder of all class members is impracticable. The precise number of class members and their addresses are unknown to Plaintiff; however, they are readily available from Defendant's records. Class members may be notified of the pendency of this action by mail, supplemented (if deemed necessary or appropriate by the Court) by published notice.

76. This action involves questions of law and fact common to the class, which predominate over questions affecting individual class members.

77. Plaintiff's claims are typical of the claims of the class because, among other things, Plaintiff, like the other members of the class, was subjected to threats to collect fees, costs, or collection measures.

78. Plaintiff has displayed an interest in vindicating the rights of the class members, will fairly and adequately protect and represent the interest of the class, and is represented by skillful and knowledgeable counsel. Plaintiff's interests do not conflict with those of the class and the relief sought by Plaintiff will inure to the benefit of the class generally.

79. The questions of law and fact that are common to the class members predominate over questions affecting only individual members, and a class action is superior to other available methods for the fair and efficient adjudication of the controversy between the class members and Defendant.

80. The actions of Defendant are generally applicable to the class as a whole and to Plaintiff. For example, the class members can prove the elements of their claims against Defendant for violations of the WVCCPA on a class-wide basis using the same evidence that Plaintiff and individual class members would use to prove those claims in individual civil actions.

81. Additionally, the damages or other financial detriment suffered by individual class members is relatively small compared to the burden and expense that would be required to individually litigate each of the class member's claims against Defendant and it would be impracticable for the class members to individually seek redress for the Defendant's wrongful conduct.

82. Even if the members of the class could afford individual litigation, given the expected size of the class, separate litigation of each class member's claims against Defendant would create the potential for inconsistent and/or contradictory judgments, and cause delay and increase the

expenses for the parties and the court in adjudicating the claims against Defendant. Conversely, a class action will prevent far fewer management difficulties, provide the benefits of a single adjudication, conserve time, effort and expense, employ comprehensive and cohesive supervision by a single court, and provide a forum for small claimants.

83. The prosecution of separate actions by the individual members of the class would create a risk of inconsistent or varying adjudications with respect to individual class members, which would establish incompatible standards of conduct for Defendant. Moreover, the likelihood that individual members of the class will prosecute separate actions is remote due to the time and expense necessary to conduct such litigation.

84. Defendant has acted on grounds generally applicable to the class, thereby making appropriate final injunctive relief with respect to the members of the class as a whole.

85. Any difficulties in management of this case as a class action are outweighed by the benefits that a class action has to offer with respect to disposing of common issues of law and fact on issues affecting a large number of litigants.

86. The damages in this case are set by statute and generally preclude the necessity of a case-by-case assessment of damages by the court. To the extent case-by-case assessment is necessary, Defendant maintains computerized individual account information, and that information can easily be reviewed and assessed electronically. Plaintiff is unaware of any litigation concerning this controversy already commenced by others who meet the criteria for class membership as described above.

87. Plaintiff's claims are typical of those of the class as a whole, and Plaintiff is capable of and willing to represent the other members of the class.

### Count I – Illegal Debt Collection — Illegal Fees
### (Class Claim)

88. Plaintiff incorporates the preceding paragraphs by reference.

89. By collecting or threatening to collect additional fees and costs not permitted by law or contract and making false representations in regard to inappropriate fees, HNB violated the West Virginia Consumer Credit and Protection Act, W.Va. Code §§ 46A-2-127(d), - 127(g), -128(c), and -128(d).

90. Plaintiff and class members are entitled to actual damages, including the amount of any illegal fee collected, and a civil penalty per violation of W.Va. Code §§ 46A-2-122, et seq., in accordance with W.Va. Code §§ 46A-5-101(1) and 106.

91. HNB's actions violate the WVCCPA entitling Plaintiff and class members to reasonable attorney's fees and costs pursuant to W.Va. Code § 46A-5-104.

### Count II – Illegal Debt Collection — Accelerated Balance
### (Class Claim)

92. Plaintiff incorporates the preceding paragraphs by reference.

93. By misrepresenting the status of the loan through statements that do not acknowledge that the loan balance had been accelerated, HNB violated the West Virginia Consumer Credit and Protection Act, W.Va. Code §§ 46A-2-127, - 127(d), and -128.

94. Plaintiff and class members are entitled to actual damages and a civil penalty per violation of W.Va. Code §§ 46A-2-122, et seq., in accordance with W.Va. Code §§ 46A-5-101(1) and 106.

95. HNB's actions violate the WVCCPA entitling Plaintiff and class members to reasonable attorney's fees and costs pursuant to W.Va. Code § 46A-5-104.

## COUNT III
### Unfair Debt Collection
### W.Va. Code § 46A-2-122, et seq.
### (Individual Claim)

96. Plaintiff incorporates the preceding paragraphs by reference.

97. HNB is a debt collector as defined by W.Va. Code § 46A-2-122 and, thus, subject to the provisions of W.Va. Code §§ 46A-2-122 through 46A-2-129, regulating debt collection practices.

98. The conduct of HNB in attempting to collect a debt, as hereinabove alleged, including but not limited to: misrepresenting the status of the loan, of the partial claim and/or of the loan modification application; returning Plaintiff's payments or refusing to allow Plaintiff to make payments; and failing to apply payments by placing or holding payments in suspense after funds sufficient to cover a full payment had accumulated constitutes one or more violations of W.Va. Code §§ 46A-2-122 through 46A-2-129.

99. Defendant engaged in unconscionable means to collect in violation of W.Va. Code § 46A-2-128 including but not limited to its general application and subsections (c) & (d).

100. Defendant made misrepresentations in collecting on the debt or in obtaining information about Plaintiff, in violation of W.Va. Code § 46A-2-127 including but not limited to its general application and subsections (d).

101. Plaintiff is entitled to actual damages, as alleged herein, and a civil penalty per violation of W.Va. Code §§ 46A-2-122, et seq., in accordance with W.Va. Code §§ 46A-5-101(1) and 106.

102. HNB willfully violated the WVCCPA; therefore, the Court should cancel any deficiency balance owed on the unsecured promissory note pursuant to W.Va. Code § 46A-5-105.

103. HNB's actions violate the WVCCPA entitling Plaintiff to reasonable attorney's fees and costs pursuant to W.Va. Code § 46A-5-104.

**PRAYER FOR RELIEF**

WHEREFORE, the Plaintiff and class members respectfully requests that the Court enter judgment against the Defendant for all damages, penalties, equitable and statutory relief alleged herein, together with pre and post judgment interest and attorney fees and costs, and any other relief the Court deems just and proper.

A TRIAL BY JURY IS DEMANDED ON ALL ISSUES SO TRIABLE

                                            **TERESA KEELING,**
on behalf of herself and
all others similarly situated,

By:   /s/ Benjamin M. Sheridan
       Benjamin M. Sheridan (#11296)
       Jed Nolan (#10833)
       Klein & Sheridan, LC
       3566 Teays Valley Road
       Hurricane, WV 25526
       (304) 562-7111
       ben@kleinsheridan.com

       Jason E. Causey (#9482)
       Bordas & Bordas, PLLC
       1358 National Rd
       Wheeling, WV 26003
       (304) 242-8410
       jcausey@bordaslaw.com

*Counsel for Plaintiffs*